```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                     EASTERN DIVISION
```

ANGELA SIMS                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 4:06CV27LN

BIG LOTS STORES, INC.                                    DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Big Lots Stores, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Angela Sims has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion should be denied.

On May 5, 2005, plaintiff Angela Sims was terminated from her employment as an area merchandiser with defendant Big Lots. On September 1, 2005, Sims filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging she was terminated on account of her race, black, and in retaliation for complaining of racial harassment. After receiving a notice of right to sue, she filed the present Title VII action on March 6, 2006, asserting claims for race discrimination and retaliation, and for racial harassment. Big Lots has moved for summary judgment, contending that this court should judicially estop Sims from pursuing her

claims because Sims filed for bankruptcy protection and secured a discharge without disclosing to the bankruptcy court her pending or potential suit or administrative proceeding against Big Lots.

The alleged facts giving rise to plaintiff's claims, as set forth in plaintiff's EEOC charge and complaint in this cause, are as follows:  While employed with Big Lots, plaintiff worked under a white assistant manager, identified by plaintiff as "Jeanine" or "Jayanne," and with a white co-worker, Melissa Harris, both of whom "are extremely prejudice against my race, black."  On one occasion, Harris referred to plaintiff as a "n____."  Plaintiff complained to the store manager a number of times about the "racist treatment [she] was receiving," but the store manager left her employment with Big Lots, whereupon "Jeanine" or "Jayanne" announced that she was in charge and began to treat plaintiff even worse than she had previously, cutting plaintiff's hours and assigning her to an undesirable shift.  After this, plaintiff became involved in a dispute with "Jeanine" or "Jayanne" who, along with two other white co-workers, then falsely reported to Big Lots management that plaintiff had threatened harm to her co-workers.  According to plaintiff, Big Lots fired her without listening to anything she had to say, and did so because of her race and because she had complained about racial harassment in the workplace.

It is undisputed that plaintiff and her husband filed a voluntary bankruptcy petition under Chapter 7 in January 2005, and that her bankruptcy case was pending both at the time she filed her EEOC charge in September 2005 and when she filed this suit in March 2006.  It is also undisputed that Sims never disclosed the claims herein to the bankruptcy court.

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation."  In re Superior Crewboats, Inc., 374 F.3d 330, 334 (5th Cir. 2004) (citing Brandon v. Interfirst Corp., 858 F.2d 266, 268 (5th Cir. 1988).  "'The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.'"  Id. (quoting In re Coastal Plains, 179 F.3d 197, 205 (5th Cir. 1999)).  The Fifth Circuit has identified three requirements for application of judicial estoppel: (1) the position of the party against which estoppel is sought is plainly inconsistent with its previous position, (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently.  Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005).  In the court's opinion, none of these requirements is satisfied.

When an individual files for Chapter 7 protection in bankruptcy court, all of her property, including any causes or

3

potential causes of action, scheduled or not, become property of her bankruptcy estate to be administered or abandoned by the bankruptcy trustee. Kamont v. West, 258 F. Supp. 2d 495, 498 (S.D. Miss. 2003). As Big Lots notes in its motion, "the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." Coastal Plains, 179 F.3d at 207-08 (citing  11 U.S.C. § 521(1)); see also Fed. R. Bankr. P. 2014.  A cause of action which accrues prepetition is plainly an asset of a debtor's bankruptcy estate, and the Fifth Circuit has not hesitated to apply judicial estoppel where a debtor has failed to disclose a known claim to the bankruptcy court and then later tried to assert that cause of action after the bankruptcy case was concluded.  See Coastal Plains, 179 F.3d at 208.  Indeed, the Fifth Circuit has written that "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." Jethroe, 412 F.3d at 600.

> The rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that *the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims

4

>     exist and then subsequently to assert those claims for
>     his own benefit in a separate proceeding.

Coastal Plains, 179 F.3d at 208 (quoting Rosenshein v. Kleban, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) (emphasis in Coastal Plains)); Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993) (a debtor "cannot [c]onceal [its] claims; get rid of [its] creditors on the cheap, and start over with a bundle of [undisclosed, pre-bankruptcy] rights.") (quoted in Coastal Plains, 179 F.3d at 213).

Although Sims did not disclose her claims to the bankruptcy court at any time during the pendency of her bankruptcy case,[1] she maintains that judicial estoppel has no arguable application here because her claims arose postpetition and as such, were never property of her bankruptcy estate and thus were not required to be disclosed.[2]

---

[1] The court notes that in paragraph 20 of bankruptcy Schedule B, the debtor is required to list "other contingent and unliquidated claims of every nature, including tax refunds, counter-claims of the debtor, and rights to set-off claims," and in the debtor's Statement of Financial Affairs, she is required to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." See In re Pryor, 341 B.R. 571, 574 (Bkrtcy. N.D. Miss. 2006).

[2] In the memorandum in support of its motion, Big Lots recites that Sims filed her bankruptcy petition "[w]hile her EEOC charge was pending." If that were correct, it would follow that plaintiff's claims arose prepetition and were an asset that became part of her bankruptcy estate, so that plaintiff had a consequent obligation to disclose the claims in her bankruptcy schedules. It is apparent, though, that Big Lots is mistaken in its assertion.

The determination whether judicial estoppel applies in this case depends begins and ends with the answer to the question whether plaintiff's claims were an asset of her bankruptcy estate. Section 541 of the Bankruptcy Code, which governs what is considered property of the bankruptcy estate, broadly defines "property of the estate" as "all . . . property, wherever located and by whomever held." 11 U.S.C. § 541(a). This includes "[a]ll legal or equitable interests of the debtor in property *as of the commencement of the case*," § 541(a)(1) (emphasis added), including contingent and unliquidated claims. In re Burgess, 438 F.3d 493, 496 (5th Cir. 2006). "The reference to all 'legal or equitable interests' includes any 'causes of action belonging to the debtor at the time the case is commenced.'" In re Segerstrom, 247 F.3d 218, 223-24 (5th Cir. 2001) (quoting Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233, 245 (5th Cir. 1988)). While "[t]he scope of § 541 is broad," bringing into the estate "all of the debtor's legal and equitable interests 'wherever located and by whomever held[,]' . . . the Code also provides a temporal limitation: property of the estate is determined at '[t]he commencement of the case.' [§ 541(a)(1)]. The case is commenced, and the estate created, when the bankruptcy petition is filed." Burgess, 438 F.3d at 496 (citing In re Swift, 129 F.3d 792, 795 (5th Cir. 1997); 5 Collier on Bankruptcy 541.02 (15th ed. rev. 2005)). Thus, while "a debtor's interest in property may be

6

contingent–or enjoyment of the interest may be postponed–until after bankruptcy, . . . the debtor *must have had a prepetition legal interest* nonetheless." Burgess, 438 F.3d at 499 (emphasis added).

"Whether a particular . . . cause of action belongs to the estate depends upon whether . . . the debtor could have raised the claim as of the commencement of the case." Matter of Educators Group Health Trust, 25 F.3d 1281, 1284 (5th Cir. 1994) (citations omitted).  A cause of action that is filed by the debtor prepetition obviously is property that belongs to the debtor and which becomes part of the bankruptcy estate.  See Wieburg v. GTE Southwest Inc., 272 F.3d 302, 306 (5th Cir. 2001) (causes of action for age and sex discrimination that arose prepetition were property of the bankruptcy estate); Wischan v. Adler, 77 F.3d 875, 877 (5th Cir. 1996) (cause of action which was brought pre-petition is property of the estate even if it had "borne fruit in settlement or judgment after commencement of the bankruptcy case. . . .").  So, too, is any cause of action that accrues prepetition, whether or not an actual proceeding has been commenced by the debtor.  See In re Swift, 198 B.R. 927, 930 (Bkrtcy. W.D. Tex. 1996) ("It is settled law that the term 'all legal and equitable interests of the debtor in property' includes causes of action which have accrued as of the commencement of the case.").  Moreover, if the cause of action has accrued

7

prepetition, then typically, upon filing of the bankrutpcy petition, it becomes property of the bankruptcy estate, regardless of whether the debtor is aware she has an actionable claim. See, e.g., Paul v. USIS Commercial Servs,. Inc., Civil No. 04-RB-1384 (CBS), 2006 WL 2385202, *1 (D. Colo. Aug. 16, 2006) (finding that debtor's claims "whether known to [him] or not, existed prior to the filing of his petition, and, thus, became property of his bankruptcy estate, because the facts that are the basis of his claims occurred prepetition").

The record in this case establishes without doubt that at the time Sims filed her bankruptcy petition on January 21, 2005, her claims for discriminatory and retaliatory discharge had not accrued. Sims' employment was terminated in May 2005, more than three months *after she filed her bankruptcy petition.* As these claims did not exist as of the commencement of plaintiff's bankruptcy case, she could not have had a prepetition interest in them and they could not become property of the bankruptcy estate. See Swift, 198 B.R. at 935 (holding that "[u]ntil a cause of action accrues, it simply does not exist," and if it does not exist, the Bankruptcy Code "does not make it property of the estate").

In the court's opinion, it also appears that plaintiff's claim for racial harassment had not yet accrued at the time she filed her bankruptcy petition. In her affidavit submitted in

8

response to defendant's motion, Sims echoes the allegations of her complaint and EEOC charge regarding alleged harassment, but provides a time frame for her allegations.  Sims states in her affidavit that she began "having problems" with Jaynine Chaison in late 2004, and at some point, "began to suspect that it was possible that Jaynine's motivations were racist, as she seem[ed] to pick that on black employees more than white ones."  Sims explains, however, that

> it was not . . . until March of 2005 when I believed
> that racism was, in fact, involved.  I heard that
> Jaynine stated that she did not want any niggers working
> under her as long as she was a manager.  I had
> previously been complaining of harassment by Jaynine,
> but it was only after this that I began complaining to
> the store manager that Jaynine's harassment was racist
> in nature.  After I began complaining about racism, I
> was fired in May 2005.

A claim for "racial harassment" or "hostile work environment" exists where the employee is subject to "(1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment."  Harris-Childs v. Medco Health Solutions, Inc., 169 Fed. Appx. 913, 917, 2006 WL 616022, *4 (5th Cir. 2006).  According to plaintiff's account of events, which is not challenged by defendant, not only was she was unaware prior to filing her bankruptcy petition that the harassment she had experienced was racially motivated, but the alleged incidents of racial harassment

9

preceding the filing of her bankruptcy petition were neither severe nor pervasive enough to create an actionable harassment claim.  She suggests that the harassment intensified after "Jaynine" assumed the position of store manager, which occurred after her bankruptcy petition was filed.  Only then did the alleged harassment perhaps become sufficiently severe and pervasive to become actionable.  See O'Rourke v. City of Providence, 235 F.3d 713, 732 (1st Cir. 2001) ("A plaintiff usually will not have a viable claim of hostile work environment from single acts that are isolated or sporadic or not themselves severe enough to alter the work environment and create an abusive work environment–both from an objective and subjective viewpoint."); Galloway v. General Motors Serv. Parts Operations, 78 F.3d 1164, 1166 (7th Cir. 1996) ("In its early stages [sexual harassment] may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable, or may not cause sufficient distress to be worth making a federal case out of, or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures.").

As plaintiff's claims did not accrue prepetition, they did not become property of her bankruptcy estate and she was not required to schedule them when she filed her bankruptcy petition. See In re Wakefield, 312 B.R. 333, 337 (Bankr. N.D. Tex. 2004)

("Obviously, a debtor has no duty to schedule the non-existence of a cause of action."). The question becomes whether she could be judicially estopped from pursuing claims that were not the property of her bankruptcy estate solely because they came into existence prior to discharge. Although there is authority to the contrary, this court concludes that judicial estoppel has no arguable application in this circumstance.

Numerous cases, including most notably Coastal Plains, 179 F.3d at 208, and Superior Crewboats, 374 F.3d at 335, have recognized that a debtor's duty of disclosure in bankruptcy proceedings is a continuing one. That is no less true in Chapter 7 proceedings than in Chapter 11 and Chapter 13 proceedings. The continuing nature of the duty means that a debtor may be required to amend his schedules to disclose property (including causes of action) that were not previously disclosed. See Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) (holding that debtors are required to amend their financial statements if circumstances change) (citing Coastal Plains, 179 F.3d at 208). However, in the court's opinion, there are important differences between bankruptcy cases filed under Chapter 11 and Chapter 13, on the one hand, and those filed under Chapter 7; and while there can be circumstances in which a Chapter 7 debtor's continuing duty of disclosure may require her to amend her schedules to disclose a previously undisclosed cause of action, "[a] Chapter 7 debtor has

11

no duty to amend [her] schedules to report" a cause of action that accrues post-petition in which the bankruptcy estate may claim no interest.  See Wakefield, 312 B.R. at 338.

The court in Wakefield addressed significant distinctions in the nature of Chapter 11 and Chapter 13 proceedings and those brought under Chapter 7, and considered how those distinctions bear on the respective debtors' duties of disclosure.  The court stated,

> Coastal Plains does not stand for the proposition that a Chapter 7 debtor has a duty to disclose assets that the debtor obtains post-petition.  The court in Coastal Plains addressed the continuing duty of a debtor under Chapter 11 of the Bankruptcy Code, citing authority for the proposition that knowledge of any type of claim "prior to confirmation" "must be disclosed." Coastal Plains, 179 F.3d at 208.  First, the court reads Coastal Plains as involving a pre-petition cause of action. Second, Chapter 11 requires that a plan proponent file a disclosure statement containing adequate information about the debtor for a hypothetical investor "to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).  That disclosure includes the post-petition, pre-plan-of-reorganization activities of the debtor. Third, a Chapter 11 plan of reorganization may address all obligations of a debtor through confirmation of the plan, thereby including pre-petition and post-petition obligations.  11 U.S.C. §§ 1123 and 1129.  Fourth, confirmation of a Chapter 11 plan results in the discharge of "any debt that arose before the date of such confirmation."  11 U.S.C. § 1141(d)(1)(A). Necessarily, then, the Chapter 11 debtor must disclose all debts, pre- and post-petition, that may be discharged upon confirmation of a plan.  These provisions have no application to Chapter 7.  11 U.S.C. § 103(g).

312 B.R. at 338.  He continued, stating,

> [A] Chapter 13 case, like a Chapter 11 case, imposes different obligations on a debtor than does a Chapter 7

12

> case because it provides the debtor with different
> rights.  Under Chapter 13, property of the bankruptcy
> estate includes, in addition to the property specified
> in § 541, "all property of the kind specified in such
> section that the debtor acquires after the commencement
> of the case but before the case is closed, dismissed or
> converted . . . [and] earnings from services performed
> by the debtor after the commencement of the case but
> before the case is closed, dismissed, or converted . . .
> ."  11 U.S.C. § 1306(a)(1) and (2).  Except as provided
> in a confirmed Chapter 13 plan or order confirming a
> plan, the debtor remains in possession of all property
> of the estate.  11 U.S.C. § 1306(b).  For Chapter 13 to
> work, given that definition of property of the estate,
> the Chapter 13 debtor has a continuing duty to disclose
> property and earnings acquired after the commencement of
> the case.  The Chapter 13 debtor's ability to confirm a
> plan and ultimately obtain a discharge turns, in part,
> on those assets and earnings. 11 U.S.C. § 1322 and 1325.
> These provisions have no application to Chapter 7.  11
> U.S.C. § 103(i).

Id. at 338-39.  See also Anderson v. First Family Financial Services, Inc., 2006 WL 218176, *1 (N.D. Miss. 2006) ("[I]n a Chapter 13 bankruptcy proceeding, all assets of the debtor belong to the estate, including interest in property acquired after the commencement of the estate[;] [t]hus the duty of disclosure in bankruptcy proceedings is a continuing one.").

To the extent the court's discussion in Wakefield could be interpreted as eschewing a *continuing* duty of disclosure in Chapter 7 cases, this court would disagree.  Although Coastal Plains was a Chapter 11 case, the Fifth Circuit also described the duty of disclosure as "continuous" in Superior Crewboats, which was a Chapter 7 case.  Moreover, one can readily envision circumstances in which a debtor may have failed to include in her

13

original bankruptcy schedules a cause of action that accrued pre-petition but later is duty bound to amend her schedules to disclose such claim.  For example, a debtor who was unaware she had a legally viable claim when she filed her petition but later realizes she has a claim, obviously must amend to disclose the claim, failing which she could later be held judicially estopped from pursuing her claim.  See Coastal Plains, 179 F.3d at 208 (holding that for the duty of disclosure to arise, "'[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . to suggest that [she] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed'") (citations omitted).

The court otherwise fully concurs in the court's reasoning in Wakefield.  In this court's opinion, a Chapter 7 debtor has no obligation at any time to disclose a cause of action that is not property of the bankruptcy estate; and therefore, the debtor's failure to disclose a cause of action that belongs to her personally, and not to her bankruptcy estate, cannot be inconsistent with the debtor's pursuing that cause of action.  See Wakefield, 312 B.R. at 338.

The court is aware, of course, of a number of cases in this circuit applying judicial estoppel to cases brought by Chapter 7 debtors cases which have referenced Coastal Plain's "continuing

14

duty" language; but in the vast majority of these cases, judicial estoppel was applied where the plaintiffs' causes of action accrued (and in some cases were even filed) prepetition. See, e.g., Anderson v. First Family Financial Servs., Inc., 2006 WL 218176, *1 (N.D. Miss. 2006) (applying judicial estoppel where each of several plaintiffs sought protection under either Chapter 7 or Chapter 13 of the bankruptcy code immediately prior to the filing of lender liability complaint or sometime during the pendency of lender liability litigation); Scott v. Vorha, 414 F. Supp. 2d 631, 632-33 (S.D. Miss. 2005) (applying judicial estoppel where plaintiff filed Chapter 7 petition for bankruptcy and failed to disclose pending medical malpractice action); Casey v. Peco Foods, Inc., 297 B.R. 73, 74-75 (S.D. Miss. 2003) (applying judicial estoppel where plaintiff filed Chapter 7 petition and failed to disclose her then-pending EEOC charge of pregnancy discrimination); Darbonne v. Gaudet, No. Civ.A. 03-1989, 2005 WL 1523328, *3-4  (W.D. La. 2005) (applying judicial estoppel even though plaintiff asserted that at time he filed for protection under Chapter 7, he had "no intention" of filing lawsuit, where conduct which was the catalyst for his post-petition lawsuit occurred prepetition and the plaintiff/debtor "certainly had enough information at [the time of his bankruptcy filing] to suggest that he might have a possible cause of action").

The only authority this court has found in this circuit directly to the contrary of its conclusion herein is <u>Heckler v. Product Development Corp.</u>, No. 3:00CV1187R, 2002 WL 824091 (N.D. Tex. April 29, 2002), in which the court applied judicial estoppel to bar a plaintiff from pursuing a discrimination claim which was based entirely on discriminatory acts that occurred two months after he had filed a Chapter 7 bankruptcy petition. The court concluded that <u>Coastal Plains</u> was "directly on point," and that judicial estoppel could properly be applied because the plaintiff/debtor knew about his claims prior to discharge and failed to disclose the claims, despite his continuing duty of disclosure. <u>Id</u>. at 4. Like the court in <u>Wakefield</u>, this court "disagrees with the proposition that any provision of the Bankruptcy Code requires a Chapter 7 debtor to disclose post-petition assets not within § 541(a) obtained after the commencement of a case but before the entry of an order of discharge." 312 B.R. at 338.

The inconsistency prerequisite to application of judicial estoppel is lacking. For Sims to pursue a cause of action which belongs to her personally, and not to her bankruptcy estate, is not inconsistent with failure to disclose her cause of action to the bankruptcy estate because there was no duty to disclose an asset which did not belong to the estate. Moreover, the second requisite for judicial estoppel is missing as well, in that the

16

"lack of an amended schedule listing an asset acquired after the commencement of the case that is not property of the bankruptcy estate and cannot be administered by the Chapter 7 trustee has no impact on the entry of a discharge order in a Chapter 7 case." Wakefield, 312 B.R. at 339.[3]

For the foregoing reasons, the court concludes that judicial estoppel does not apply and it is therefore ordered that Big Lots' motion for summary judgment is denied.

SO ORDERED this 28th day of September, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3] The court need not consider whether plaintiff's failure to disclose her claims was inadvertent, given that she had no duty to disclose them in any event. But in light of the court's conclusion thus far, it should go without saying that the nondisclosure here would qualify as inadvertent. A debtor's "failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Coastal Plains, 179 F.3d at 210 (emphasis in original). Plaintiff could not have known of claims that did not even exist, and she never had any motive for concealment, as the claims, even had they been disclosed, would still have belonged to Sims personally and she would have suffered no detriment from their disclosure.

17